CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 18 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RUBEN TRAVIS FIELDS, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 7:11CV00001 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| R.C. MATHENA, ) | By: Hon. Glen E. Conrad |
| ) | Chief United States District Judge |
| Respondent. ) | |

In October of 2005, a jury in Washington County, Virginia convicted Ruben Travis Fields of the capital murder of Conley Peters. Fields was also convicted of using a firearm during the commission of the murder and robbery. In accordance with the jury's verdict, the Circuit Court of Washington County sentenced Fields to a total term of imprisonment of life plus three years. After having failed to obtain relief on direct appeal or in state post-conviction proceedings, Fields has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is presently before the court on the respondent's motion to dismiss. For the reasons set forth below, the court will grant the respondent's motion.

**Factual Background**

On July 26, 2003, Conley Peters was killed while chopping wood on a neighbor's property. He died from a shotgun wound to his neck. Peters was 64 years old at the time. The evidence at trial revealed that he was known to carry large amounts of cash on his person.

Fields' sister, Cindy Reece, lived in a house that Peters owned, which was approximately one half of a mile from Peters' home. Reece testified that Fields visited her on the day before the murder and threatened to kill Peters.

In the early morning hours of July 26, 2003, Fields spoke to Garland Bowman. During their conversation, Fields told Bowman that he was in need of money, that he knew an old man who carried a lot of money, and that he was going to rob the man. Bowman testified that Fields possessed a shotgun during their conversation, and that Fields emphasized that he would do whatever it took to get the money.

Following the murder, Fields possessed a lot of money. On July 27, 2003, the day after the murder, Fields made arrangements to stay at Billy Penley's residence in Bristol, Tennessee. Penley testified that Fields gave him a $100 dollar bill, and that the bill was pulled from a "pretty thick" stack of money that Fields had in his pocket. (10/4/2005 Tr. at 550). After he was arrested, Fields told his girlfriend that he had buried money in her yard. Fields also called his niece and offered to tell her where she could find a lot of money.

On July 29, 2003, Fields gave a statement to the police that placed him in the vicinity of the crime scene at the time of the murder. Fields also admitted that he possessed a shotgun at the time that he was near the crime scene. Although Fields claimed that the shotgun was hidden in a particular area of the woods, the police were unable to find it.

The Commonwealth presented testimony from two inmates who were incarcerated with Fields following his arrest. Timothy Hayes testified that Fields admitted to killing a man with a shotgun after the man refused to disclose where he kept his money. Likewise, William Deel testified that Fields admitted to shooting a man for his money.

## Procedural History

Fields was indicted by a grand jury in Washington County in July of 2004, and a four-day jury trial began on October 3, 2005. The jury ultimately convicted Fields of capital murder, use

of a firearm in the commission of the murder, and robbery. In accordance with the jury's verdict, the circuit court sentenced Fields to a total term of imprisonment of life plus three years. In so doing, the circuit court emphasized that it was confident that Fields was guilty of the crimes with which he was charged, and that, based upon the evidence, Fields "deserve[d] the most severe sentence that [was] left for [the] Court to impose." (2/17/06 Tr. at 8).

Fields thereafter appealed to the Court of Appeals of Virginia. In his petition for appeal, he raised three claims: (1) that the evidence was insufficient to prove the capital murder and firearm charges; (2) that the evidence was insufficient to prove the robbery predicate of capital murder; and (3) that the trial court erred in refusing to admit evidence that another person owed money to the murder victim.

On February 7, 2007, Fields' petition for appeal was denied by a three-member panel of the Court of Appeals. Fields then filed a petition for appeal in the Supreme Court of Virginia. The petition was refused by order entered June 28, 2007.

Fields then filed a petition for writ of habeas corpus in the Circuit Court of Washington County, in which he raised the following claims:

A. The petitioner was denied due process in that he was not told that Deputy Jessee Kennedy was convicted of tampering with the evidence in another case;

B. The petitioner's counsel was ineffective in that:

1. Counsel failed to subject the Commonwealth's case to vigorous adversarial testing;

2. Counsel failed to move for a change of venue due to adverse publicity;

3. Counsel failed to object to the sheriff assisting with the exhibits in Circuit Court;

4. Counsel failed to call witnesses requested by the petitioner;

5. Counsel failed to adequately explore whether anyone had tampered with the crime scene;

6. Counsel failed to object to habit evidence;

7. Counsel failed to sequester the jury and witnesses;

8. Counsel failed to object to incomplete recordings of the petitioner's police interview; and

9. Counsel failed to determine when the 911 call was made.

The Circuit Court dismissed the petition on March 11, 2010. Fields' subsequent appeal was refused by the Supreme Court of Virginia on December 10, 2010.

On January 4, 2011, Fields filed the instant petition pursuant to 28 U.S.C. § 2254. The petition asserts the following claims:

I. Trial counsel was ineffective in that:

A. Counsel failed to move for a change of venue due to adverse publicity;

B. Counsel failed to object to the sheriff assisting with the exhibits in Circuit Court;

C. Counsel failed to adequately explore whether anyone had tampered with the crime scene;

D. Counsel failed to subject the Commonwealth's witnesses to meaningful adversarial testing or cross-examination;

E. Counsel failed to sequester the jury and witnesses;

F. Counsel failed to investigate the case;

G. Counsel failed to investigate the timing of the 911 call;

H. Counsel failed to call defense witnesses requested by the petitioner;

I. Counsel failed to object to the admission of incomplete recordings of the petitioner's police interview; and

J.  Counsel failed to object to habit evidence.

II. Petitioner was denied due process and equal protection in that:

A.  The prosecution failed to notify the petitioner of illegal activity involving probable crime scene contamination and/or tampering;

B.  The Commonwealth failed to provide effective legal counsel; and

C.  The trial court failed to properly sequester the members of the jury and the witnesses who testified against the petitioner.

III. The evidence was insufficient to prove the capital murder and firearm charges.

IV. Newly discovered evidence reveals that the lead investigator in the petitioner's case was charged with embezzlement, credit card theft, credit card fraud, and identity theft, and that the investigator eventually pled guilty to malfeasance in office. The prosecution violated the petitioner's constitutional rights by failing to disclose such evidence.

On February 11, 2011, the respondent moved to dismiss the petition. The court subsequently granted Fields an extension of time in which to respond to the motion. Despite receiving the requested extension, Fields has not filed a response. The respondent's motion is now ripe for review.

## Standards of Review

A federal petitioner challenging a state conviction or sentence generally must exhaust remedies available in the state in which he was convicted before seeking federal habeas relief. 28 U.S.C. § 2254(b). To properly exhaust state remedies, the petitioner must fairly present the substance of his claims to the state's highest court. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). The purpose of this requirement is "to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal citation and quotation marks omitted).

5

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-732 (1991). Procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). This court cannot review the merits of a procedurally defaulted claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Harris v. Reed, 489 U.S. 255, 262 (1989).

When a claim has been adjudicated on the merits in state court, a federal court owes considerable deference to the state court's decision with respect to that claim. Pursuant to § 2254(d), this court may grant habeas relief on a claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## Discussion

I. **Claim I(A)**

In claim I(A), Fields contends that his trial attorneys were ineffective in failing to move for a change of venue due to adverse publicity. Fields raised the same claim in his state habeas petition. The state habeas court held that the claim failed to satisfy the two-part test for ineffective assistance enunciated in Strickland v. Washington, 466 U.S. 668 (1984). For the following reasons, the court concludes that the state habeas court's decision is entitled to deference under 28 U.S.C. § 2254(d).

To succeed on a claim of ineffective assistance, a petitioner must establish that counsel's performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. The petitioner must also show that counsel's deficient performance prejudiced his defense. Id. To demonstrate prejudice, the petitioner generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

Based on the court's independent review of the record, the court concludes that Fields has failed to satisfy either element of the Strickland test. He has not proffered any evidence of adverse publicity surrounding his case, and it is undisputed that counsel investigated the media coverage and determined that it did not warrant a change of venue. Moreover, during voir dire, the Circuit Court thoroughly questioned the prospective jurors regarding their knowledge of the case and their ability to be fair and impartial despite having read or heard about the case in the media. All of the jurors who indicated that they had heard about the case stated, on an individual

7

basis, that their prior knowledge would not affect their ability to be fair and impartial. Based on the prospective jurors' responses, defense counsel was satisfied that an impartial jury could be empaneled, and Fields has failed to demonstrate that counsel's performance was deficient or that he suffered any resulting prejudice. See Mu'Min v. Virginia, 500 U.S. 415, 430 (1991) (emphasizing that when prospective jurors have been exposed to pretrial publicity, "the relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant"). Accordingly, claim I(A) must be dismissed.

**II.    Claim I(B)**

In claim I(B), Fields alleges that his trial attorneys were ineffective in failing to object to the sheriff assisting with exhibits during trial, since the sheriff also served on the crime scene investigative team. When Fields raised this claim in his state petition, the state habeas court held that the claim failed to satisfy either prong of the Strickland test.

Having reviewed the record, the court concludes that the state court's decision is entitled to deference under § 2254(d). The record reveals that the sheriff did not testify at trial and that he merely acted as a bailiff. Fields has not identified any evidence which would suggest that the sheriff's presence in the courtroom prejudiced his defense, and the court is unaware of any rule of law which forecloses the sheriff from performing ministerial courtroom duties merely because his office was responsible for investigating the criminal case. Accordingly, the court concludes that claim I(B) must be dismissed.

8

## III. Claim I(C)

In claim I(C), Fields alleges that his attorneys failed to adequately explore whether anyone had tampered with the crime scene. Fields raised the same claim in his state habeas petition. In adjudicating this claim, the state habeas court held that Fields failed to satisfy either prong of the Strickland test.

Based on the court's independent review of the record, the court concludes that the state court properly applied Strickland, and that the state court's disposition of the claim did not involve an unreasonable determination of the facts. As the respondent emphasizes, Fields has not proffered any evidence to support his claim of crime scene tampering. Moreover, it is undisputed that his attorneys investigated the crime scene and that they determined that there was no basis to believe that it had been tampered with or contaminated. In the absence of any evidence to support his claim, Fields cannot demonstrate that his counsel's performance was deficient or that he suffered any resulting prejudice. See Nickerson v. Lee, 971 F.2d 1125, 1126 (4th Cir. 1992) (conclusory assertions, standing alone, are insufficient to warrant habeas relief). Accordingly, the court concludes that the state habeas court's decision is entitled to deference under § 2254(d) and that claim I(C) must be dismissed.

## IV. Claim I(D)

In claim I(D), Fields alleges that his trial attorneys failed to subject the Commonwealth's witnesses to vigorous adversarial testing or meaningful cross-examination. When Fields raised the same claim in his state petition, the state habeas court held that the claim was without merit under Strickland. In so doing, the Court emphasized that trial counsel knew from discovery what the witnesses' testimony would be and that counsel strategically decided which questions to ask

9

on cross-examination. The state habeas court further held that Fields had not demonstrated any resulting prejudice.

Having reviewed the record, the court concludes that this claim is also subject to dismissal. While Fields asserts that his attorneys' cross-examination of the Commonwealth's witnesses should have been more vigorous, he has not identified any evidence that would have been admitted if counsel's cross-examination had included additional questions. Consequently, Fields has failed to establish that his attorneys' performance was deficient or that he suffered any resulting prejudice. See Johnson v. United States, 2008 U.S. Dist. LEXIS 11709, at *7 (W.D. N.C. Feb. 4, 2008) (holding that the petitioner's "vague allegation of failing to cross unidentified witnesses [was] wholly insufficient to establish a claim of ineffective assistance of counsel"); see also Nickerson, 971 F.2d at 1136.

### V. Claim I(E)

In claim I(E), Fields alleges that trial counsel was ineffective in failing to sequester the jury and the Commonwealth's witnesses. Fields raised the same claim in his state habeas petition. In adjudicating the claim, the state habeas court held that Fields failed to demonstrate that the jury or the witnesses were prejudiced by any alleged failure to sequester. Additionally, relying on defense counsel's affidavit, the state court found that the witnesses were separated, and that counsel was of the opinion that the jury would obey the court's instruction not to discuss the case or read anything about it during trial.

In the instant petition, Fields has not provided any evidence to support his claim of ineffective assistance. Likewise, he has not identified any evidence which contradicts the findings and conclusions of the state habeas court. Consequently, Fields has failed to

10

demonstrate that the state court's decision was based on an unreasonable application of federal law or that it was based on an unreasonable determination of the facts. Accordingly, claim I(E) is also subject to dismissal.

### VI. Claim I(F)

In claim I(F), Fields alleges that his trial attorneys were ineffective in failing to investigate the timing of the 911 call. When Fields raised the same claim in his state petition, the state habeas court held that the claim was without merit under Strickland. Relying on the affidavit from trial counsel, the Court found that Fields' attorneys investigated the 911 call, that they did not believe that there was any significance to the timing of the call, and that they had no basis for challenging it.

In the instant petition, Fields provides no support for his claim of ineffective assistance other than his own conclusory assertion that the timing of the 911 call should have been further investigated and/or challenged. Because Fields has not proffered any evidence to support his claim, and since counsel is not ineffective for failing to advance frivolous arguments, the court concludes that claim I(F) must be dismissed. See Nickerson, 971 F.2d at 1126; see also Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005).

### VII. Claim I(G)

In claim I(G), Fields alleges that his attorneys were ineffective in failing to call requested defense witnesses. Fields raised the same claim in his state habeas petition. The state habeas court held that the claim failed to satisfy either prong of the Strickland test. In so doing, the state court emphasized that the petitioner failed to proffer evidence of any resulting prejudice from counsel's alleged failure to call witnesses. Moreover, the state court noted that Fields' trial

attorneys were fully aware of the Commonwealth's evidence and that their investigation revealed that Fields did not have any additional witnesses who would be helpful to his defense.

Having reviewed the record, the court agrees with the respondent that the state habeas court's disposition of the claim is entitled to deference. In order to demonstrate the requisite prejudice, a petitioner must not only show that a witness's testimony would have been favorable, but also that the witness would have testified. Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985); see also United States v. Konsavich, 2009 U.S. Dist. LEXIS 56322, at *15 (W.D. Va. June 19, 2009). In the instant case, Fields has not demonstrated that any witnesses would have testified on his behalf or that the witnesses' testimony would have been favorable to his defense. Accordingly, the court concludes that claim I(G) must be dismissed.

### VIII. Claim I(H)

In claim I(H), Fields alleges that his trial attorneys failed to object to the admission of incomplete recordings of his police interview. When the petitioner raised the same claim in his state habeas petition, the state habeas court held that it was without merit under Strickland. Relying on the affidavit from trial counsel, the Court emphasized that counsel had the entire transcript of the interview, and that the entire recording was played for the jury.

Having reviewed the record, the court concludes that the state habeas court's decision is entitled to deference. Fields' claim of ineffective assistance is based solely on his own conclusory assertions. He has not identified any portions of his interview that were not played for the jury, or otherwise proffered any evidence which contradicts the findings and conclusions of the state habeas court. Because his conclusory assertions, standing alone, are insufficient to

warrant federal habeas relief, claim I(H) is also subject to dismissal. See Nickerson, 971 F.2d at 1126.

### IX. Claim I(I)

In Claim I(I), Fields contends that his trial attorneys should have objected to the Commonwealth's evidence of the victim's habit of carrying cash. When Fields raised the same claim in his state petition, the state habeas court held that it was without merit under Strickland.

Having reviewed the record, the court concludes that the state court's decision is entitled to deference under §2254(d). First, Fields has failed to demonstrate that his attorneys' performance fell below an objective standard of reasonableness. It is undisputed that his attorneys researched the issue prior to trial, and that counsel were of the opinion that there was no valid basis for an objection. In addition, the court's own review of the applicable case law has revealed no precedent which unequivocally dictates that evidence of a victim's habits is inadmissible in a criminal case. Consequently, the court is unable to conclude that counsel was ineffective in failing to object to the evidence at issue. See Engle v. Isaac, 456 U.S. 107, 133-34 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.").

Moreover, Fields has failed to establish the requisite prejudice. Specifically, he has failed to demonstrate that there is a reasonable probability that the jury's verdict would have been different if the challenged evidence had been excluded. Based on its own review of the record, the court is convinced that the Commonwealth presented ample additional evidence from which a jury could have found, beyond a reasonable doubt, that Fields was guilty of robbing Peters. As

the trial court emphasized in denying Fields' motion to strike the robbery count:

> There's evidence of Mr. Fields . . . the night before this incident trying to sell items because he needed money, indicating to a friend that night of his plan to rob a man who carried large sums of money, admissions to the jail people that he did rob a man that was carrying large sums of money. There was evidence that the next day he had large sums of money.

(10/5/2005 Tr. at 738).

For these reasons, the court concludes that the state habeas court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. Accordingly, claim I(I) must be dismissed.

### X.    Claim II(A)

In claim II(A), Fields alleges that the prosecution violated his constitutional rights by failing to advise him "of illegal activity involving probable contamination and tampering of [the] crime scene area during the investigation." Fields raised essentially the same claim in his state habeas petition. The state habeas court concluded that the claim was barred by Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), since it could have been raised on direct appeal.

The United States Court of Appeals for the Fourth Circuit has held that the default rule set forth in Slayton constitutes an adequate and independent state ground for the denial of federal habeas relief. See, e.g., Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998). Consequently, this court may not review the merits of the petitioner's claims "absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default." Id. at 844. Because Fields has failed to make either showing, claim II(A) is subject to dismissal.

14

## XI. Claims II(B) and (C)

In claims II(B) and (C), Fields alleges that the Commonwealth violated his constitutional rights by failing to provide effective legal counsel, and that the trial court violated his constitutional rights by failing to properly sequester the members of the jury and the witnesses who testified against him. Fields did not raise either of these substantive claims on direct appeal or in his state <u>habeas</u> petition. If Fields now attempted to present the claims in a state <u>habeas</u> petition, the claims would be barred by Va. Code § 8.01-654(B)(2), which generally prohibits successive petitions.

The Fourth Circuit has recognized that the procedural rule set forth in Virginia Code § 8.01-654(B)(2) provides an adequate and independent ground for denying claims for federal <u>habeas</u> relief. <u>See</u>, <u>e.g.</u>, <u>Fisher</u>, 163 F.3d at 851-852. Consequently, this court may not review the merits of the petitioner's claims absent cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default. <u>Id.</u> at 852. Because Fields has failed to make either showing, claims II(B) and (C) are subject to dismissal.

## XII. Claim III

In claim III, Fields alleges that the evidence was insufficient to support his convictions for capital murder and use of a firearm during the commission of the murder. Under Virginia law, the crime of capital murder includes the "willful, deliberate, and premeditated killing of any person in the commission of robbery or attempted robbery." Va. Code § 18.2-31(4). Additionally, Virginia Code § 18.2-53.1 makes it unlawful "for any person to use or attempt to use any . . . shotgun . . . in a threatening manner while committing or attempting to commit murder . . . ."

Fields raised the same claim on direct appeal. Upon reviewing the evidence presented by the Commonwealth, the Court of Appeals ultimately held that "the jury could conclude beyond a reasonable doubt that appellant committed the charged offenses." (Nov. 20, 2006 Op. at 2). For the following reasons, the court concludes that the Court of Appeals' decision is entitled to deference under § 2254(d).

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Circumstantial evidence alone can be sufficient to support a conviction. Stamper v. Muncie, 944 F.2d 170, 174 (4th Cir. 1991).

Applying these principles, the court concludes that any rational trier of fact could have found the essential elements of the crimes at issue beyond a reasonable doubt. As the Court of Appeals emphasized in its opinion:

> The victim died from a shotgun wound to his neck. Evidence was presented that the victim was known to have carried large amounts of cash on his person.
>
> Before the victim was murdered, [Fields] told his sister he would kill the victim. On or about the date of the murder, [Fields] told Garland Bowman he knew an old man who carried a lot of money and [Fields] intended to rob the man. Bowman stated [Fields] possessed a shotgun when he made the statement. [Fields] said he would do whatever it took to accomplish the robbery. Evidence was presented that [Fields] was in need of money just prior to the murder and that just after the murder, [Fields] possessed cash. One witness testified that on the day after the murder, [Fields] had a

> "pretty thick" "stack of money." [Fields] told his girlfriend he had buried cash in or near her yard.
>
> [Fields] gave a statement to the police placing him in the area of the crime scene at the time of the murder. [Fields] gave varying accounts of what he was doing at the time of the murder. [Fields] also admitted he possessed a shotgun at the time he was near the crime scene. He told the police he hid the shotgun in the woods, but they did not find the gun where [Fields] indicated it was hidden.
>
> Two inmates who were incarcerated with [Fields] testified that he admitted to participating in the robbery and killing of a man for money.

(Nov. 20, 2006 Opinion at 1-2).

When viewed in the light most favorable to the Commonwealth, the court concludes that the Commonwealth presented sufficient evidence to support Fields' convictions. While there was no scientific evidence implicating the petitioner, the Commonwealth introduced compelling circumstantial evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that Fields killed Conley Peters; that the killing was willful, deliberate, and premeditated; and that the killing occurred during the commission of a robbery. Likewise, a rational trier of fact could have found that Fields used a shotgun to commit the murder. Accordingly, claim III is subject to dismissal.

### XIII. Claim IV

In Claim IV, Fields alleges that "newly discovered evidence" regarding Deputy Jessee Kennedy reveals that Kennedy was charged with embezzlement, credit card theft, credit card fraud, and identity theft, and that he eventually pled guilty to malfeasance in office. Fields asserts that Kennedy's charges were pending when Fields' case went to trial, and that the charges were nonetheless concealed from the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963).

17

In Brady, the Supreme Court held that the prosecution's failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. In order to prevail on a Brady claim, the petitioner must prove: "(1) that the undisclosed evidence was favorable to him, either because it was exculpatory or had impeaching value; (2) that the state had the materials and failed to disclose them, 'either willfully or inadvertently'; and (3) that the evidence was material to the defense, i.e., 'prejudice must have ensued.'" Moseley v. Branker, 550 F.3d 312, 316 (4th Cir. 2008) (quoting Strickler v. Greene, 527 U.S. 263, 282 (1999)).

Fields did not raise the Brady claim in his state habeas petition. If Fields now attempted to present the claim in a state habeas petition, the claim would be barred by Va. Code § 8.01-654(B)(2). Consequently, the claim is procedurally defaulted, and the court may not review the merits of the claim absent a showing of cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default. Fisher, 163 F.3d at 844. "Evidence that does not meet the prejudice threshold for a Brady claim necessarily fails to satisfy the prejudice prong of the procedural default analysis." Bramblett v. True, 59 F. App'x 1, 12 (4th Cir. 2003).

In this case, even if Fields could establish cause to excuse his default of the Brady claim, he has failed to establish the requisite prejudice. Stated differently, there is no "reasonable probability that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." Strickler, 527 U.S. at 289 (internal quotation marks omitted). Under Virginia law, "a litigant's right to impeach the credibility of a witness by showing [his] participation in criminal conduct is limited to questions about convictions." Booker v. Commonwealth, 2004 Va. App. LEXIS 137, at *8 (Va. Ct. App. Mar. 30, 2004). The

18

"[a]dmission of unadjudicated crimes for purposes of general impeachment" is not permitted. Ramdass v. Commonwealth, 437 S.E.2d 566, 572 (1993), vacated on other grounds, 512 U.S. 1217 (1994). Here, while Fields alleges that Kennedy's charges were pending when his case went to trial, there is no evidence that the charges had been adjudicated at that time. Consequently, Fields has failed to establish that the undisclosed information could have been used to impeach Kennedy's testimony at trial.

Moreover, as the respondent emphasizes, Kennedy's testimony was limited. His direct and cross-examination encompassed only five pages of an over 800-page transcript. Kennedy testified that he and his partner, Deputy Blaine Finley, were the first officers to respond on the scene. Although they initially believed that Peters was the victim of a chainsaw accident, Kennedy noticed a large wound on the back of Peters' neck and what appeared to be a "shotgun pellet in the side of the [victim's] jaw underneath the skin." (10/3/2005 Tr. at 195). Consequently, Kennedy and Deputy Finley classified the area as a crime scene, and "notified the Detective Division of the Sheriff's Office to respond." (10/3/2005 Tr. at 195). The detectives from that division were responsible for the actual investigation of the scene.

Given Kennedy's limited involvement in the case, the court is unable to conclude that there is a reasonable probability that the result of the proceedings would have been different if Fields had been able to impeach Kennedy's credibility with unrelated credit card offenses. Consequently, claim IV is also subject to dismissal.

### Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss. Additionally, because the petitioner has failed to demonstrate "a substantial showing of the

denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for respondent.

ENTER: This 18th day of May, 2011.

/s/ Glen Conrad
Chief United States District Judge